Taylor vs. Parker and others.

TAYLOR vs. PARKER and others.

BOND *of constable; liability of surety thereon.*

1. The liability of a *surety* cannot be extended by construction or doubtful
   implication.
2. By the conditions of a bond duly given by P. as a constable, he and
   his sureties jointly and severally agreed to pay to the persons entitled
   thereto " all such sums of money as the said constable [might] be liable
   to pay by reason of or on account of any summons, execution or other
   process or proceeding which [should] be delivered to him for collection,
   and for all moneys which [should] come into his hands as such constable."
   *Held*, that no action will lie upon the bond for the amount of a judg-
   ment recovered by plaintiff against P. for the value of plaintiff's prop-
   erty seized by P. under an attachment against the goods of a third
   person.
   [3. *It seems* that the bond would cover a breach of duty by the constable not
   only in omitting to serve a *fi. fa.*, but also in omitting to serve a sum-
   mons or other process.]

APPEAL from the Circuit Court for *Rock* County.

The defendant *Parker* was constable of the city of Janes-
ville; and the defendants *Bates* and *Watson* were sureties on
his official bond. By the terms of the bond, the defendants
"jointly and severally agree to pay to each and every person
who shall be entitled thereto, all such sums of money as the
said constable may be liable to pay by reason or on account
of any summons, execution, or other process or proceeding,
which shall be delivered to him for collection, and for all mon-
eys as may come into his hands as such constable."

The other facts alleged by the plaintiff are thus stated by

Taylor vs. Parker and others.

COLE, J.: "The complaint alleges that *Parker*, acting as constable, under and by virtue of two warrants of attachment delivered to him, one in favor of Brooks, and one in favor of Conant & Holdredge, against one Porter, wrongfully seized and carried away the property of the plaintiff mentioned in the complaint; that judgments were afterwards obtained in these attachment suits, and, by an arrangement between Brooks and Conant & Holdredge on the one side, and Porter on the other, this property was surrendered by Porter, and taken by the judgment creditors in payment of their respective judgments, all of which was done without the knowledge of the plaintiff. It further states that the plaintiff commenced an action against *Parker*, to recover possession of the property; that *Parker* gave the statutory bond, and kept the property; and that finally, in that suit, the plaintiff had judgment that the property be delivered to him, and, in case a delivery could not be had, that he recover of *Parker* its value as assessed by the jury. It also appears from the complaint that the plaintiff is unable either to obtain possession of the property or to collect its value on execution. It is also stated that, at the time *Parker* seized the property on the warrants of attachment, the plaintiff notified him that the same was his property, and not the property of Porter."

Defendants' demurrers to the complaint on the ground (among others) that it did not state a cause of action, were overruled; and from a judgment against all the defendants, they appealed.

The cause was submitted on the brief of *Bennett & Sale* for the appellant, and that of *H. A. Patterson* and *M. S. Prichard* for the respondent.

For the appellant it was argued, that the liability of a surety is not to be extended by construction, and that the act of *Parker* was a mere trespass, for which he was liable as a *person*, and not as an officer, and which was not within the terms or meaning of the bond. *Ex parte Reed*, 4 Hill, 572; *People*

*v. Schuyler*, 5 Barb., 166; *State v. Brown*, 11 Ired., 141; *Haynes v. Bridge*, 1 Cold., 32; *Crittenden v. Terrill*, 2 Head, 588; *Governor v. Hancock*, 2 Ala., 728; *Dane v. Gilmore*, 51 Me., 544; *Rollins v. The State*, 13 Mo., 437; *Bogart v. Green*, 8 id., 115; *State v. Conover*, 4 Dutch., 224.

For the respondent it was argued, that the undertaking sued upon should be construed together, and effect given to its apparent intention (*Harrington v. Smith*, 28 Wis., 43, and cases there cited); that, from the mention of "summons" and "other process," it is evident that the liability of the sureties was not to be confined to process for the collection of money; that an attachment is clearly within the intent of the undertaking; that *Parker* was "liable to pay" moneys "by reason of process" placed in his hands, and therefore the sureties were liable; and that the object in requiring official bonds from sheriffs and constables is to indemnify others, not only against failures to pay over money or execute process, but also against other unlawful acts done *colore officii*, including the levying of a writ upon the property of one not named in it. *People v. Schuyler*, 4 Coms., 173; *Skinner v. Phillips*, 4 Mass., 69; *City of Lowell v. Parker*, 10 Met., 309; *Greenfield v. Wilson*, 13 Gray, 384; *Tracy v. Goodwin*, 5 Allen, 409; *Archer v. Noble*, 3 Me., 418; *Harris v. Hanson*, 11 id., 241; *Camack v. Comm.*, 5 Binney, 184; *Forsythe v. Ellis*, 4 J. J. Marsh., 299; *Comm. v. Stockton*, 5 Mon., 192; *Ohio v. Jennings*, 4 Ohio St., 418; *State ex rel. Blincbury v. Mann*, 21 Wis., 684.

COLE, J. The question arising on the demurrer is: Can the defendants *Bates* and *Watson* be held liable, on the facts stated in the complaint, for the trespass committed by their codefendant, *Parker*? The extent of their liability must of course depend upon the condition of the undertaking into which they have entered, and which is a literal compliance with the provisions of the charter in regard to the bonds of constables of

the city. See ch. 474, P. & L. Laws of 1866, sub-ch. III, sec. 18. We think the facts stated do not show a breach of the condition.

It is a cardinal rule, too well settled to require the citation of authority in its support, that the liability of a surety cannot be extended by construction or doubtful implication. In view of this elementary principle, let us inquire what clause of the condition the constable violated, when he unlawfully seized the property of the plaintiff, under warrants of attachment issued against Porter. Was not that act a mere trespass, doubtless perpetrated *colore officii*, for which the constable alone was liable?

The sureties certainly did not undertake to indemnify and secure the public against such unlawful acts. If so, what words impose that responsibility? The sureties agreed to answer for the default of the constable in not paying over moneys which might come to his hands *virtute officii;* also for his neglect or failure to properly execute any summons or other process, by which a party to such process was injured or sustained a loss. It is true, the language of the condition is not very aptly chosen to include a liability for omitting to serve a summons or other process, except a *fi. fa.;* but probably it was intended to cover such a breach of duty on the part of the constable. But this is the extent of the obligation which the sureties have assumed, merely to become answerable for any neglect or failure of the constable to legally do some act, which the due execution of his office authorized and required him to perform. It is nonfeasance or misfeasance in respect to an official act, not malfeasance as respects a third party, that constitutes a breach of the condition. The bond is substantially the same as that required to be given by constables under the general statute (sec. 96, ch. 15, R. S.), and by constables in New York, when the cases of the *People v. Holmes et al.*, 2 Wend., 281; *Dutton v. Kelsey*, id., 615; *Fellows v. Gilman*, 4 id., 414; *People v. Holmes*, 5 id., 192; *Lawton v.*

*Erwin,* 9 id., 233; *Sloan v. Case,* 10 id., 370; *Skellinger v. Yendes,* 12 id., 306; and *Cornell v. Barnes,* 7 Hill, 35, were considered and decided. Both in New York at that time, and here, the bond given by a constable is not as broad, by its terms, as that given by a sheriff *(The People v. Schuyler,* 4 N. Y., 174, and sec. 96, ch. 13, R. S. Wis.; *State ex rel. Blinebury v. Mann,* 21 Wis., 684); and therefore what would be an act of official misconduct, rendering the surety liable in case of a sheriff, will not necessarily amount to a breach of a constable's bond in either state. It seems to us that a seizure by the constable of the property of the plaintiff, under color of the warrants of attachment against Porter, was malfeasance, not an official act embraced within the condition for which the sureties were liable. It is doubtless true that the reasoning, in some of the decisions which we have examined, goes to the extent of making the sureties responsible in the case before us; but, in so doing, we should extend the language of the condition beyond its natural import and meaning. This we have no right to do.

It is obvious, that the reasons of public policy relied upon by the learned counsel for the plaintiff, for holding the sureties liable, cannot affect our construction of the condition. By the words of the contract, the sureties are not responsible for the trespass committed by *Parker.*

It follows from these views, that the judgment of the circuit court must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.* — It is so ordered.